UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANGEL RUIZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:23-CV-418-ACL |
| | ) |
| MARTIN O'MALLEY, | ) |
| Commissioner of Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM**

Plaintiff Angel Ruiz brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that Ruiz was not disabled because she could perform jobs existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).  A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed.

### I.  Procedural History

Ruiz filed her application for benefits on November 21, 2019.  (Tr. 424-31.)  She claimed she became unable to work on September 25, 2019, due to hip pain, back pain, anxiety, and depression.  (Tr. 459, 463.)  Ruiz was 29 years of age at her alleged onset of disability date.

(Tr. 25.)   Her application was denied initially.   (Tr. 70-93.)   On May 17, 2022, an ALJ issued a decision finding Ruiz not disabled.   (Tr. 13-26.)   On February 15, 2023, the Appeals Council denied Ruiz's claim for review.   (Tr. 1-4.)   Thus, the decision of the ALJ stands as the final decision of the Commissioner.   *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Ruiz first argues that the ALJ "failed to properly evaluate medical opinion evidence."   (Doc. 18 at 3.)   She next argues that the decision "fails to properly evaluate Plaintiff's pain and other subjective symptoms."   *Id.* at 6.   Finally, Plaintiff contends that the "RFC is not supported by substantial evidence."   *Id.* at 11.

## II.  The ALJ's Determination

The ALJ first found that Ruiz met the insured status requirements of the Social Security Act through September 30, 2022.   (Tr. 15.)   He stated that Ruiz has not engaged in substantial gainful activity since her alleged onset date.   *Id.*   In addition, the ALJ concluded that Ruiz had the following severe impairments: obesity; disorders of the lumbar and cervical spine; borderline intellectual functioning; depressive, bipolar and related disorders; anxiety; PTSD; pain disorder with psychological factors; chronic pain syndrome; asthma; left hip dysfunction; osteoarthritis; carpal tunnel syndrome of the right hand; and neuropathy of the left wrist (20 CFR 404.1520(c). *Id.*   The ALJ found that Ruiz did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.   (Tr. 17.)

As to Ruiz's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can never climb ladders, ropes and scaffolds.   The individual can occasionally climb ramps and stairs.   The individual can occasionally stoop, crouch, kneel and crawl.   The individual can

Page **2** of **16**

> handle objects, that is gross manipulation, frequently with the bilateral upper extremities. The individual can finger, that is fine manipulation of items no smaller than the size of paper clips frequently with the bilateral upper extremities. The individual can feel frequently, with the bilateral upper extremities. The individual can have occasional exposure to irritants such as fumes, odors, dust, gasses, and poor ventilation. The individual can have no use of hazardous machinery and no exposure to unshielded moving mechanical parts. No exposure to unprotected heights. No exposure to extreme heat, humidity and cold. The claimant is able to understand, remember and carry out simple instructions in the performance of simple, routine and repetitive tasks. The individual can use judgment to make simple work-related decisions, and the individual can have occasional changes in routine work settings. The individual can have superficial contact with the public (where superficial is defined to mean the contact is incidental and not an essential function of the job) and only occasional interaction with coworkers and supervisors. She is limited to jobs in which she could work in proximity to but not in coordination with coworkers and supervisors.

(Tr. 19-20.)

The ALJ found that Ruiz was unable to perform any past relevant work. (Tr. 25.) He stated that there were other jobs existing in significant numbers in the national economy that Ruiz could perform, such as housekeeper and retail clerk. (Tr. 25-26.) The ALJ therefore concluded that Ruiz was not disabled. (Tr. 26.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on November 21, 2019, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

*Id.*

### III.  Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).  "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."  *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the

claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

**III.B.  Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in

several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the

medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th

Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating

of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders.  *See id.*  If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment.  *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV.  Discussion

Ruiz first challenges the ALJ's evaluation of the medical opinion evidence.  She argues that the ALJ failed to properly evaluate the opinions of her psychiatrist and primary care provider under the relevant Regulations.  Ruiz also challenges the ALJ's evaluation of the prior administrative medical findings, her subjective complaints, and the ALJ's RFC determination.

Ruiz filed her application for benefits after March 27, 2017.  Accordingly, the ALJ's treatment of medical opinion evidence is governed by 20 C.F.R. §§ 404.1520c and 416.920c.  Under these regulations, an ALJ considers all medical opinions equally and evaluates their persuasiveness according to several specific factors – supportability, consistency, the medical source's relationship with the claimant, specialization, and other factors such as the source's understanding of the Social Security Administration's disability policies.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  An ALJ must "articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record."  20 C.F.R. §§ 404.1520c(b), 416.920c(b).

In evaluating the persuasiveness of a medical opinion, the factors of supportability and consistency are the most important for an ALJ to consider, and the ALJ must "explain how [he] considered the supportability and consistency factors ... in [the] determination or decision."  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The Regulations provide as follows regarding supportability: "The more relevant the objective medical evidence and supporting explanations

Page **9** of **16**

presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  As to consistency, the Regulations provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

An ALJ's failure to address either the consistency or supportability factor in assessing the persuasiveness of a medical opinion requires reversal.  *Bonnett v. Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021) (unpublished) (per curium) (citing *Lucas v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding where ALJ discredited physician's opinion without discussing factors contemplated in regulation, as failure to comply with opinion-evaluation regulation was legal error)); *see also Starman v. Kijakazi*, No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *5 (E.D. Mo. Sept. 29, 2021).  An ALJ need not explain in his or her decision how he or she considered the other factors.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Kelly Gable, Pharm. D.,[1] completed a Medical Source Statement-Mental on April 13, 2022.  (Tr. 1792-95.)  The statement is also signed by "Jaron Asher-Collaborating Psychiatrist."  (Tr. 1795.)  Dr. Gable expressed the opinion that Ruiz's mental impairments caused marked interference in her concentration, persistence, and pace.  (Tr. 1792.)  Dr. Gable estimated that Ruiz's pace of production in a low stress environment performing simple work would be 31 percent or more below average.  *Id.*  Dr. Gable found Ruiz had marked limitations

---

[1] Although the parties and the ALJ refer to Ms. Gable as a psychiatrist, the record reveals she is a Pharm. D. collaborating with a psychiatrist.  (Tr. 1499.)

in all areas of understanding, remembering, and applying information; and adapting or managing herself.  (Tr. 1793.)   She also had marked limitations in all areas of interacting with others, except she was only moderately limited in the ability to ask simple questions or request help.  *Id.*   Dr. Gable found Ruiz could not perform work in proximity to co-workers without being distracted by them or without distracting them due to exhibition of abnormal behavior.  *Id.*   She could not consistently perform for supervisors without exhibiting insubordinate behavior in response to supervision.  (Tr. 1794.)   Dr. Gable found that Ruiz could not perform work in a setting with any contact with the general public.  *Id.*   She would be late to work or need to leave work early due to her psychologically-based symptoms three times a month or more.  *Id.*   Ruiz would miss three days or more of work a month due to panic attacks, hypervigilance, paranoia, racing thoughts, and suicidality.  *Id.*   Dr. Gable indicated that she had been treating Ruiz since March 1, 2021, and had most recently diagnosed her with PTSD with panic attacks and mood dysregulation.  (Tr. 1795.)   Ruiz had tried many psychiatric medications since adolescence.  *Id.*   Dr. Gable stated that Ruiz would have difficulty working at a full-time job due to chronic toxic stress, difficulty with insomnia, chronic depression, and anxiety all the time that is triggered while around others.  *Id.*

  The ALJ stated that he considered the opinion of Dr. Gable and found it "unpersuasive." (Tr. 24.)   The ALJ found that Dr. Gable's opinion was "not well supported by her analysis, was inconsistent with her treatment notes, was not supported by recommendations for increased care requirements, and inconsistent with the claimant's reporting."  *Id.*   He stated that Dr. Gable's findings "are also not consistent with the largely normal mental status exams of the claimant found in the record."  *Id.*

  Ruiz argues that the ALJ erred in failing to explain which parts of Dr. Gable's opinion

were inconsistent with which parts of Ruiz's reporting or other evidence in the record.   The undersigned agrees.

An ALJ's mere reference to the words "support" and "consistent" in her treatment of a medical opinion is "insufficient to satisfy the Regulation's requirement that the ALJ 'explain' how she considered these factors in determining the persuasiveness of a medical opinion." *Martini v. Kijakazi*, No. 4:20-CV-1711-CDP, 2022 WL 705528, at *4 (E.D. Mo. Mar. 9, 2022). The ALJ's explanation need not be exhaustive, but boilerplate or "blanket statements" do not satisfy the requirement.   *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (quoting *Walker v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 550, 554 (8th Cir. 2018)).   "No matter the adequacy of the ALJ's general summary of the evidence of record, she nevertheless [must] abide by the Regulation's mandate to 'explain' the supportability [and consistency] of [a medical] opinion in view of such evidence."   *Martini*, 2022 WL 705528 at *5; *see also Pipkins v. Kijakazi*, No. 1:20-CV-161-CDP, 2022 WL 218898 (E.D. Mo. Jan. 25, 2022) (finding that the ALJ's failure to "explain" and "articulate" the supportability and consistency of medical opinion evidence was reversible error even when the ALJ elsewhere adequately summarized the evidence of record, and it supported the RFC determination).   The Regulation requires "more than a conclusory statement as to the supportability and consistency factors so a reviewing court can make a meaningful assessment of a challenge to an ALJ's evaluation of the persuasiveness of various medical opinions."   *Hirner v. Saul*, No. 2:21-CV-38 SRW, 2022 WL 3153720, at *9 (E.D. Mo. Aug. 8, 2022).

The ALJ's evaluation of Dr. Gable's opinion fails to adequately address the factors of supportability and consistency.   First, the ALJ summarizes Dr. Gable's opinions, which would result in a finding of disability   Then, he dismisses the opinion as unpersuasive because they are

"not well supported by her analysis," "inconsistent with her treatment notes," "inconsistent with the claimant's reporting," and "not consistent with the largely normal status exams of the claimant found in the record." (Tr. 24.)   The ALJ, however, provides no concrete examples of any such inconsistencies.   In support of his conclusion that Dr. Gable's opinion was inconsistent with "largely normal mental status exams," the ALJ cited "Exhibit C4F; C7F; C17F; C18F; C19F; C23F)." *Id.*   These exhibits together amount to over 800 pages of treatment notes, dated January 2020 to March 2022.   The ALJ does not explain what "largely normal" means in this context, which findings he considered to be largely normal, or how largely normal findings in one area undermines the rest of Dr. Gable's opinion.   A review of these treatment notes reveals Ruiz often complained of anxiety and depression and was found to be agitated or tearful on multiple occasions. (Tr. 1624, 1579, 1453, 1474, 1479, 1486, 1516, 11517.)   The evidence upon which the ALJ relied in finding Ruiz's mental status examinations were "largely normal" is unknown.

Moreover, the ALJ's discussion of Ruiz's mental impairments earlier in his decision consists of only a single paragraph.   (Tr. 23.)   The ALJ, without citing any examples, states that Ruiz's mental complaints "were inconsistent between providers and not supported by her exams."   (Tr. 23.)   He acknowledges that Ruiz received special education assistance in school and had a Full-Scale IQ of 77.   *Id.*   The ALJ notes that Ruiz's treatment has consisted of counseling and medication, with some instances of noncompliance with medication.   *Id.* He concludes that "[a]side from appearing stressed, anxious, tearful, disheveled, reported poor sleep, and concerns over her safety, the claimant's mental status exam were largely normal."   *Id.* The ALJ again fails to explain what "largely normal" means.   Indeed, the findings of appearing stressed, anxious, tearful, and disheveled cited by the ALJ tend to support the opposite

conclusion.

There is little in the ALJ's opinion to show that the ALJ met the requirement of the Regulations to discuss the factors in 20 C.F.R. § 404.1520c. Overall, the ALJ's evaluation did not make his reasoning sufficiently specific enough to make it clear to any subsequent reviewers. *Lucus*, 960 F.3d at 1069.

The ALJ's evaluation of the opinion of primary care provider Caroline Day, M.D., is similarly flawed.

Dr. Day completed a Medical Source Statement-Physical on April 21, 2022. (Tr. 1801-03.) She listed Ruiz's diagnoses as chronic low back pain, cervicalgia, moderate persistent asthma, and PTSD. (Tr. 1801.) As to objective findings, Dr. Day noted "ataxic gait, ongoing." *Id.* Dr. Day indicated that Ruiz's pain or other symptoms would interfere with attention and concentration needed for even simple work tasks more than 20 percent of the workday. *Id.* Dr. Day expressed the opinion that Ruiz could lift 20 pounds occasionally and 10 pounds frequently; sit for 30 to 45 minutes at a time and sit a total of 4 to 5 hours in an 8-hour workday; could walk 1 to 2 city bocks at a time; could stand 30 to 45 minutes at a time and stand a total of 2 to 3 hours in an 8-hour workday; would need to shift positions at will from sitting, standing, or walking; was able to reach, handle, and finger less than two hours in an 8-hour workday in the right and left upper extremities; would require three or more unscheduled breaks during the workday; and needs to prop her feet at least occasionally during the workday. (Tr. 1802-03.) Dr. Day stated that Ruiz would be late to work, need to leave early, or miss work three times or more a month due to "exhaustion, pain, and dyspnea from asthma flares." (Tr. 1803.) Dr. Day indicated that Ruiz would also have difficulty working full-time due to "concentration issues and pain issues." (Tr. 1803.) Finally, Dr. Day stated that Ruiz's limitations began on February 28, 2020, the day

Ruiz fell at work.  *Id.*   She noted that Ruiz has been getting regular care and has been referred to specialists.  *Id.*

The ALJ found Dr. Day's opinion "mostly unpersuasive."  (Tr. 24.)   He explained that the opinion "setting forth extreme limitations was not well supported or consistent with her treatment records."  *Id.*   The ALJ stated that Dr. Day's findings are "further inconsistent with the objective medical testing and other exam findings as detailed above."  *Id.*   Finally, the ALJ stated that the limitations to light work with no need to use an assistive device "was generally consistent and supported by her record, these findings are otherwise internally inconsistent with her otherwise extreme limitations further reducing the persuasiveness of her opinion."  *Id.*

Although the ALJ stated that Dr. Day's findings were not consistent with her treatment notes, the ALJ provides no examples of findings contained in *Dr. Day's treatment notes* and includes no citation to the record.   In support of his finding that Dr. Day's opinion was inconsistent with the "objective medical testing and other exam findings," the ALJ cites to some exhibits but does not point to *any specific findings* contained therein.

A reviewing court cannot fill the gaps in an ALJ's opinion, nor offer its own reasoning and analysis to satisfy the Regulation's requirement.  *See Laramie v. Kijakazi*, No. 4:22-CV-107-ACL, 22023 WL 2610215, at *7 (E.D. Mo. Mar. 23, 2023); *see also Hirner*, 2022 WL 3153720, at *9 ("Section 416.920c(b) requires more than a conclusory statement as to the supportability and consistency factors so a reviewing court can make a meaningful assessment of a challenge to an ALJ's evaluation of the persuasiveness of various medical opinions.").   Nor was this error harmless.   If the ALJ had given the opinions of Drs. Gable and Day greater weight, then the RFC may have had additional restrictions.   *See Lucus*, 960 F.3d at 1069.

Accordingly, the undersigned finds that the ALJ erred in analyzing the persuasiveness of the medical opinion evidence. This error affected the ALJ's RFC determination, which renders it without the support of substantial evidence. Because remand is required for revaluation of the opinion evidence and RFC, the Court will not address Ruiz's remaining arguments. *See, e.g.*, *Laramie*, 2023 WL 2610215, at *8.

## V.    Conclusion

For the foregoing reasons, the Court finds that the ALJ's decision is not supported by substantial evidence because the ALJ did not properly evaluate the opinion evidence within the record. On remand, the ALJ must fully evaluate and explain the supportability and consistency of the medical opinion evidence, in accordance with 20 C.F.R. § 404.1520c, and formulate a new RFC based on substantial evidence.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of September, 2024.